UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| *Plaintiff*, | ) ) |
| | ) No. 1:15-cv-00659-JMS-MJD |
| *vs.* | ) ) |
| VEROS PARTNERS, INC., MATTHEW HAAB, JEFFERY B. RISINGER, VEROS FARM LOAN HOLDING LLC, TOBIN J. SENEFELD, FARMGROWCAP LLC, PINCAP LLC, and PIN FINANCIAL LLC, | ) ) ) ) ) |
| *Defendants*. | ) |

## **ORDER**

Presently pending before the Court in this case brought under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") is Defendant Tobin Senefeld's Motion for Summary Judgment, [Filing No. 189].

### I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on

matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed. 202 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the

existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

As discussed below, the Court finds that numerous genuine issues of fact exist, making summary judgment in favor of Mr. Senefeld inappropriate. In reaching that conclusion, the Court need not address every factual discrepancy the SEC enumerates, but will discuss the key factual disputes that preclude summary judgment. The Court will first set forth background information regarding the dispute between the parties and a brief summary of relevant securities law, before discussing the fact issues that exist.

## II.
## BACKGROUND[1]

Veros Partners, Inc. ("Veros") is an SEC-registered investment advisor located in Indianapolis, Indiana. [Filing No. 57 at 1.] Defendant Matthew Haab is Veros' President and Defendant Jeffrey Risinger is an attorney who has performed legal work for Veros and Mr. Haab. [Filing No. 57 at 5.] Pin Financial LLC ("Pin Financial"), a Relief Defendant in this matter, has been the placement agent for certain private offerings made to Veros' advisory clients, and Mr. Senefeld is the Chief Executive Officer of, and a registered representative with, Pin Financial. [Filing No. 57 at 5.] Defendant Veros Farm Loan Holding LLC ("VFLH") is an issuer of securities, and is managed by Veros. [Filing No. 57 at 5.] Defendants FarmGrowCap LLC ("FarmGrowCap") and PinCap LLC ("PinCap") are also issuers of securities, and are based out of Mr. Risinger's law office in Carmel, Indiana. [Filing No. 57 at 5-7.]

---

[1] These background facts are taken in part from the Amended Complaint, [Filing No. 57], as they are basic background facts that are undisputed by the parties. The Court will discuss the facts relevant to the pending motion, including Mr. Senefeld's specific role in connection with the investments in question, later in this opinion.

- 3 -

Veros had approximately 300 advisory clients in June 2015. [Filing No. 57 at 6.] Mr. Haab and Adam Decker founded Veros and were majority owners. [Filing No. 191-1 at 5.] In 2009, Mr. Senefeld approached Mr. Haab with a farm loan opportunity that was subsequently offered to Veros clients and other investors through a private offering. [Filing No. 9-4 at 18-19; Filing No. 198-5 at 10-11.] This was followed by other farm loan opportunities which Mr. Senefeld presented to Mr. Haab, and which were ultimately offered to Veros clients or other investors. [Filing No. 9-4 at 19; Filing No. 9-4 at 25; Filing No. 10-1 at 8-9; Filing No. 198-5 at 11.] These private offerings included:

- Crossroads Family Farms 2012 Loan: $3,370,000 was raised from investors, the stated rate of return for investors was 12% annually, and the investors were supposed to be repaid their principal and interest by March 30, 2013. [Filing No. 31-1 at 1];

- Kirbach Farms 2012 Loan: $1,430,000 was raised from investors, the stated rate of return for investors was 11.5% annually, and the investors were supposed to be repaid their principal and interest by March 30, 2013. [Filing No. 31-1 at 1];

- VFLH Offering: $9,664,000 was raised from investors, the stated rate of return for investors was 10% annually, and the investors were supposed to be repaid their principal and interest by April 30, 2014. [Filing No. 31-1 at 1];

- PinCap Interim Financing Offering: $5,200,000 was raised from investors, the stated rate of return for investors was 1.5% per month, and the investors were supposed to be repaid their principal and interest by April 30, 2014. [Filing No. 31-1 at 2.]

- FarmGrowCap Offering: $11,045,482 was raised from investors, the stated rate of return for investors was 9% annually, and the investors were supposed to be repaid their principal and interest by April 30, 2015. [Filing No. 31-1 at 2.]

These offerings were all separate investments with separate offering materials and separate groups of investors. [Filing No. 9-4 at 19; Filing No. 9-4 at 50-51.]

On April 22, 2015, Plaintiff the United States Securities and Exchange Commission (the "SEC") filed this lawsuit against Mr. Senefeld, Mr. Haab, Mr. Risinger, VFLH, FarmGrowCap,

Veros, and PinCap on April 22, 2015, [Filing No. 1], and filed the operative Amended Complaint against the same Defendants on June 11, 2015, [Filing No. 57]. In the Amended Complaint, the SEC alleges that investors purchased securities issued in 2013 by VFLH and in 2014 by FarmGrowCap. [Filing No. 57 at 1.] The SEC alleges that both VFLH and FarmGrowCap are controlled and operated by Mr. Haab, Mr. Risinger, and Mr. Senefeld. [Filing No. 57 at 2.] It claims that the investors in the 2013 and 2014 offerings were told either orally or in writing by Mr. Haab, and in the written offering documents, that "investor funds would be used to make short-term operating loans to farmers for the 2013 and 2014 growing seasons." [Filing No. 57 at 2.] The SEC alleges that, instead, "significant portions of the loan proceeds were not used for current farming operations but were used to cover the farms' prior, unpaid debt. In addition, Haab, Risinger, and Senefeld used money from the 2013 and 2014 Offerings to make approximately $7 million in payments to investors in other offerings and to pay themselves over $800,000 in undisclosed 'success' and 'interest rate spread' fees." [Filing No. 57 at 2.]

The SEC sets forth several other actions taken by Mr. Haab, Mr. Risinger, and Mr. Senefeld that they contend were improper. [Filing No. 57 at 2-3.] In particular, the SEC alleges that money from the 2013 and 2014 offerings was used to repay investors from offerings made in the previous year. [Filing No. 57 at 11; Filing No. 57 at 22.] The SEC asserts that amounts owed to investors in connection with both the 2013 and 2014 offerings are past due. [*See, e.g.*, Filing No. 57 at 24-26 (alleging that farm loans funded by 2014 offering are past due with a $7 million shortfall).]

The SEC asserts claims for: (1) violations of Section 10(b) and Rule 10b-5 of the Exchange Act against all Defendants; (2) violations of Section 17(a)(1) of the Securities Act against all Defendants; (3) violations of Sections 17(a)(2) and (a)(3) of the Securities Act against all Defendants; (4) violations of Sections 206(1) and (2) of the Investment Advisers Act against Mr. Haab and

Veros; (5) violations of Sections 206(4) of the Investment Advisers Act and Rule 206(4)-2 against Veros; and (6) a claim against Relief Defendant Pin Financial, who allegedly "received improper and illegal transfers of investor money from Defendants, even though it had no right to receive any investor funds." [Filing No. 57 at 26-30.]

### III.
#### DISCUSSION

Mr. Senefeld argues that he is not liable for violations of § 10(b), as implemented by Rule 10b-5, as a matter of law because he was not the "maker" of any disclosures to investors, he did not cause any misstatements to be made, and he did not have a fiduciary duty to the investors. [Filing No. 190 at 23-26.] He also alleges that he did not engage in manipulative or deceptive acts, and did not act with scienter. [Filing No. 190 at 26-31.] Similarly, Mr. Senefeld argues that the SEC cannot show he was the "seller" or "offeror" of securities, which he contends is needed for a § 17(a) claim. [Filing No. 190 at 32.] He also contends that the SEC cannot show he employed a "device, scheme or artifice to defraud," or that he acted with scienter. [Filing No. 190 at 32-33.]

The SEC responds that Mr. Senefeld can be liable under § 17(a)(1) and (a)(3), § 10(b), and Rule 10b-5 as a participant in a fraudulent scheme with other Defendants, and that he need not have had direct contact with investors or made direct statements to investors. [Filing No. 197 at 27.] The SEC contends that Mr. Senefeld was "an important participant in a fraudulent scheme," and that he acted with scienter because he was "at least reckless in not knowing that the Defendants' scheme, and his own conduct, defrauded investors…." [Filing No. 197 at 28-30.] The SEC also argues that Mr. Senefeld may be found liable under § 17(a)(2) and (a)(3), § 10(b), and Rule 10b-5 because he used misleading statements in materials provided to investors in order to obtain "success fees" that were not disclosed to investors. [Filing No. 197 at 31.] The SEC argues that,

for purposes of its claims under § 17(a)(2) and (a)(3), Mr. Senefeld at least acted negligently because he "had knowledge and expertise regarding farm loans" and a reasonable trier of fact could conclude that he "breached a duty of care by failing to advise the VFLH and FarmGrowCap investors that the 2012 and 2013 farm loans had not been profitable, and that Defendants' plans to repay prior investors with VFLH and FarmGrowCap offering funds made it less likely that the new farm loans would ever be profitable." [Filing No. 197 at 32-33.]

On reply, Mr. Senefeld argues that evidence the SEC submitted in response to his Motion for Summary Judgment is inadmissible, including: (1) unauthenticated emails; (2) statements in Declarations that contradict the declarant's prior, sworn testimony; (3) evidence that constitutes speculation; and (4) evidence that relates to facts not relevant to the SEC's claims in this lawsuit. [Filing No. 208 at 1-12.] Mr. Senefeld argues that the material facts remain undisputed, including that he "did not write or control the content of the [private placement memoranda ("PPMs")] or other disclosures to investors and did not disseminate them to Veros investors," Mr. Haab was in control over what loans were offered as investments to investors, and Mr. Senefeld was responsible for communicating with the farmers and not the investors. [Filing No. 208 at 12-13.] He asserts that the SEC has not identified any actions he took that support liability for primary violations of securities laws, that he was not the "maker" of disclosures to the investors, that the SEC cannot establish that he caused Mr. Haab or Mr. Risinger to make any misleading statements, that the SEC has not identified any deceptive acts by him, and that the SEC has not identified any duty he owed to "[Mr.] Haab's investors." [Filing No. 208 at 14-20.]

In its surreply, the SEC argues that the emails in question are authentic and are not hearsay because they are not offered to prove the truth of any statement within the email. [Filing No. 215 at 4-5.] The SEC also contends that Mr. Senefeld does not show any actual contradictions between

Mr. Haab's and Mr. Risinger's statements in their Declarations and their statements in their SEC investigative testimony. [Filing No. 215 at 11.] Finally, the SEC argues that the Declarations do not contain inadmissible speculation, and that the evidence Mr. Senefeld claims is irrelevant is not because it contradicts facts offered by Mr. Senefeld. [Filing No. 215 at 16-19.]

### A. Summary of Applicable Securities Law

The SEC alleges that Mr. Senefeld has violated Section 10(b) of the Securities Exchange Act, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange – (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

The SEC alleges that Mr. Senefeld also violated Rule 10b-5, which states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

"Rule 10b-5 forbids a company or an individual 'to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light

of the circumstances under which they were made, not misleading.'" *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008) (quoting 17 C.F.R. § 240.10b-5(b)).  In order to establish a violation of § 10(b), the SEC must establish that Mr. Senefeld: "(1) made a material misrepresentation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *S.E.C. v. Bauer*, 723 F.3d 758, 768-69 (7th Cir. 2013) (citations and quotations omitted).  "[O]nly persons who act with an intent to deceive or manipulate violate Rule 10b-5," but "reckless disregard of the truth counts as intent for this purpose." *S.E.C. v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998) (citations omitted).

> Section 17(a) of the Securities Act provides:
>
> It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement…by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1) to employ any device, scheme, or artifice to defraud, or
>
> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. § 77q.

The elements of claims for violations of § 10(b), Rule 10b-5, and § 17(a)(1) are substantially the same.  *See S.E.C. v. Maio*, 51 F.3d 623, 631 (7th Cir. 1995); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 531 (7th Cir. 1985).  "The principal difference is that § 10(b) and Rule 10b-5 apply to acts committed in connection with a *purchase or sale of* securities while § 17(a) applies to acts committed in connection with an *offer or sale of* securities." *Maio*, 51 F.3d

at 631 (emphasis in original) (citing *SEC v. International Loan Network, Inc.*, 770 F.Supp. 678, 694 (D.D.C. 1991)). Because the SEC here alleges claims under all of these provisions for conduct related both to the purchase and sale of securities, and the offer and sale of securities, the Court will address these sections together. The Court notes that the SEC need not establish that Mr. Senefeld acted with scienter for its claims that he violated § 17(a)(2) and (a)(3).

While § 10(b) refers to liability for the maker of untrue statements, the Seventh Circuit Court of Appeals has held that § 10(b) liability extends to "a defendant [who] is personally involved in a plan or scheme to market securities…, assuming that he has acted with the requisite degree of intent." *S.E.C. v. Holschuh*, 694 F.2d 130, 143 (7th Cir. 1982); *see also U.S. S.E.C. v. Lyttle*, 538 F.3d 601, 604 (7th Cir. 2008) ("One doesn't have to be the inventor of a lie to be responsible for knowingly repeating it to a dupe. The defendants could not have thought that the fact that [a co-defendant] told them something implausible (to put it mildly) made it true").

### B. Factual Disputes

#### 1. Evidentiary Issues

As discussed below, the parties dispute many key facts in this case. Specifically, the SEC presents evidence with its response brief which contradicts many of the facts set forth by Mr. Senefeld. The evidence the Court relies upon from the SEC which demonstrates that factual disputes exist – which the SEC submitted with its response brief – include email messages either sent or received by Mr. Senefeld, Mr. Risinger's statements during the SEC investigation, and Declarations submitted by Mr. Haab, Mr. Risinger, and Shawn Gustafson (who worked for Mr. Senefeld at FarmGrowCap, PinCap, and Pin Financial as a senior analyst). In his reply brief, Mr. Senefeld argues that the Court should not consider any of this evidence. The Court will address each category of evidence before substantively discussing that evidence.

a. Emails

Mr. Senefeld argues in his reply brief that the emails the SEC submits with its response brief are unauthenticated and inadmissible. [Filing No. 208 at 1-4.] He also argues that the SEC should have offered the emails to him at the investigative stage, so he could address them in his testimony. [Filing No. 208 at 2.] Additionally, Mr. Senefeld contends that most of the emails only copy him and do not contain statements that appear to be by or about him, and that the emails are inadmissible hearsay. [Filing No. 208 at 3-4.]

In its surreply, the SEC submits a Declaration from Mr. Haab showing that he either authored or received the emails at issue. [Filing No. 215 at 2.] The SEC argues that "the Federal Rules do not require that a party question an opposing party about an exhibit before using it in opposition to a motion for summary judgment," and that the cases Mr. Senefeld relies on for his argument are inapposite. [Filing No. 215 at 3.] The SEC contends that Mr. Senefeld's argument that the SEC must establish that Mr. Senefeld received and read the emails on which he is copied is incorrect, that several of the emails are from Mr. Senefeld, that Mr. Senefeld does not deny sending, receiving, or reading the emails, and that Mr. Senefeld has admitted that the email addresses associated with the emails were his. [Filing No. 215 at 3-4.] The SEC also argues that the emails are not hearsay because they are not offered to prove the truth of any statements within them. [Filing No. 215 at 5-6.]

The emails the SEC submits in connection with its response brief are admissible. Even if they are considered hearsay, they would be admissible under Fed. R. Evid. 807. *See United States v. Dumeisi*, 424 F.3d 566, 576 (7th Cir. 2005) ("Rule 807 permits evidence to be admitted if it has sufficient 'circumstantial guarantees of trustworthiness'"); *Brokaw v. Boeing Company*, 137 F.Supp.3d 1082, 1094-95 (N.D. Ill. 2015) (finding emails were admissible under Fed. R. Evid. 807

- 11 -

because they were "written under highly reliable circumstances" and "[t]he authors attest under oath that the statements made in their emails are true and accurate"); *Parker v. Four Seasons Hotels, Limited*, 2014 WL 1292858, *3 (N.D. Ill. 2014) (finding email was admissible under Fed. R. Evid. 807, and stating "courts have long recognized that the prohibition on hearsay is not intended to be a mechanical bar on otherwise reliable evidence"). Additionally, emails that Mr. Senefeld authored himself would also be admissible under Fed. R. Evid. 801(d)(2) as a statement "offered against an opposing party and…made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A).

Importantly, Mr. Senefeld does not dispute that the accounts the emails went to which are associated with his name are his. Further, the SEC was under no obligation to produce these emails to Mr. Senefeld during its investigation. The emails were submitted to contradict statements in Mr. Senefeld's Declaration submitted in support of his Motion for Summary Judgment, which is perfectly permissible under the Federal Rules of Civil Procedure. Further, any authentication issue would be cured by Mr. Haab's Declaration submitted with the SEC's surreply. The court will consider the emails the SEC submits with its response brief.

b. Declarations

Mr. Senefeld argues that statements Mr. Haab and Mr. Risinger made in their Declarations which contradict their earlier sworn testimony should not be relied upon. [Filing No. 208 at 4.]

In its surreply, the SEC agrees that generally a party cannot create an issue of fact by submitting an affidavit which contradicts prior testimony, but argues that Mr. Senefeld has not identified any true contradictions between the statements Mr. Haab and Mr. Risinger made to the SEC during its investigation, and the statements in their Declarations. [Filing No. 215 at 11-16.]

The only paragraph from the Declarations that the Court relies upon below in its discussion of the factual issues that are present in this case, and that Mr. Senefeld specifically argues is inadmissible, is Paragraph 32 from Mr. Haab's Declaration. That paragraph states:

> In ¶ 48 of the Senefeld Declaration, Senefeld states that "I did not draft any of the [PPMs] or any other disclosures to investors." However, Senefeld provided both Risinger and me with information to be used in the PPMs and other disclosures that were provided to investors. For example, in 2011 and 2012 Risinger and Senefeld helped create a document entitled "The Case for Investing in Farms: A Summary for Accredited Investors Only," which was intended to be used in soliciting investors in farm loan investments…. Although the final draft was a group project, Senefeld and Risinger were the source of the information on the economics of farming, collateral security and farm profitability, which is contained in this document. And Senefeld was aware that I did use this document and provided it to investors and potential investors. In addition, Risinger sent multiple drafts of the 2013 and 2014 PPMs to both Senefeld and me. Senefeld, Risinger, and I occasionally had calls to discuss the draft PPMs. Based on my conversations and interactions with Senefeld, I am confident that he knew the content of the PPMs that were provided to investors.

[Filing No. 198-3 at 11-12.]

Mr. Senefeld argues that these statements contradict Mr. Haab's prior testimony to the SEC, where he testified as follows:

> Q: Is that a document called The Case For Investing in Farms?
>
> A: Yes.
>
> Q: And who authored that document?
>
> A: Jeff Risinger.
>
> Q: Did you review or edit it at all before sending it to your investors?
>
> A: I definitely reviewed it. I may have provided a few comments or edits to Jeff. But I definitely reviewed it before he finalized it.
>
> Q: But Jeff drafted the document?
>
> A: Yes.

[Filing No. 9-4 at 41.]

The Court does not find Mr. Haab's statements in his Declaration to contradict his testimony during the SEC's investigation. The investigation testimony is more general in nature, but Mr. Haab did not represent that Mr. Senefeld had no role at all in drafting the document in question. His statements in his Declaration that Mr. Senefeld provided information which was used to create the document does not contradict Mr. Haab's earlier testimony that Mr. Risinger was the document's author.[2]

The Court need not address Mr. Senefeld's additional arguments regarding other statements in either Mr. Haab's, Mr. Risinger's, or Mr. Gustafson's Declarations, as it does not rely upon those statements in reaching its conclusion below.

### 2. *Specific Disputed Facts*

It is clear from reviewing the SEC's and Mr. Senefeld's briefs that they have very different views of Mr. Senefeld's role in the allegedly fraudulent scheme that is at the center of this lawsuit. The evidence submitted to support these different views precludes summary judgment. Even under Mr. Senefeld's view of the applicable law, which is that the SEC must show he himself had direct contact with investors and made fraudulent statements to them, summary judgment is inappropriate. The Court will not belabor all of the factual disputes that exist between the parties, but instead sets forth some key facts that bear directly on Mr. Senefeld's liability, and that are vigorously disputed. The following table reflects facts presented by Mr. Senefeld, and contradictory facts set forth by the SEC (with supporting citations).

---

[2] The Court does not rely upon the last sentence of ¶ 32 of Mr. Haab's Declaration that "[b]ased on my conversations and interactions with Senefeld, I am confident that he knew the content of the PPMs that were provided to investors," [Filing No. 198-3 at 12], so it need not consider whether that statement is speculative and therefore inadmissible.

| **MR. SENEFELD'S FACTS** | **THE SEC'S CONTRADICTORY FACTS** |
|---|---|
| Mr. Senefeld "did not know the identities of the investors and did not communicate with them." [Filing No. 190 at 10; Filing No. 191-2 at 4.] Mr. Senefeld did not "otherwise communicate with investors." [Filing No. 191-2 at 7.] | • June 18, 2013 email from Mr. Senefeld to a principal of one of the farms that borrowed money through private offerings, which states "I look forward to meeting you again this Wednesday June 19th at 10:30 am and introducing you to our clients Marty and Laura McFarland and my business partner Matt Habb (sic). If I may answer any questions or be of any assistance prior to our meeting please feel free to contact me on my cell phone." [Filing No. 198-9 at 2.] Marty McFarland was an investor in the private offerings. [*See* Filing No. 198-8 at 5-7 (Email from Jessica McGowan at Veros to Mr. Senefeld stating "[a]ttached is the spreadsheet of wires, including the ones that are outstanding and the ones that went directly to [PinCap]," and attaching spreadsheet reflecting that Martin and Laura McFarland sent a wire transfer to PinCap).]<br><br>• June 28, 2013 email from Mr. Senefeld to Mr. Risinger, Mr. Haab and others, stating "Great News. I dropped off Rick Dennen's check at Matt's office with the Receptionist this afternoon." [Filing No. 198-12 at 2-3.] Mr. Dennen invested in the 2014 PinCap Interim Financing Offering. [*See* Filing No. 198-8 at 4-7.]<br><br>• February 24, 2014 email from Mr. Senefeld to Rick Dennen which states "Let me know if you have any time available to meet for coffee early one morning this week. I can will (sic) fill you in on the details of our meeting with Marty [McFarland] along with the opportunities we [are] presently working on for 2014. I look forward to speaking with you again soon." [Filing No. 198-10 at 2.]<br><br>• June 21, 2014 email from Mr. Senefeld to Mr. McFarland stating "Thanks again Marty for your continued support & involvement. Let me know if you have time early Mon morning to meet for coffee before you head out." [Filing No. 198-7 at 3.] Mr. McFarland responded the next day "Tobin – Thanks for the invite but unfortunately I'm tied up with calls all morning. I will let you guys know where I am on this deal tomorrow (Monday). I apologize but I was not in a position to review this investment with Laura this weekend as we were tied up with guests." [Filing No. 198-7 at 3.] |

| | |
|---|---|
| | • Mr. Risinger stated in his Declaration that Mr. Senefeld "was acquainted with and was responsible for introducing at least five people who subsequently invested in the private offerings. Senefeld…communicated directly with and met with these individuals in order to solicit them to invest in private offerings (other than FarmGrowCap)." [Filing No. 198-4 at 6.] |
| | • Mr. Haab stated in his Declaration that Mr. Senefeld "knew certain investors in the private offerings such as Marty McFarland and Rick Dennen. In fact, Senefeld communicated with these individuals and had meetings with them in order to encourage them to invest in the private offerings." [Filing No. 198-3 at 6.] |
| Mr. Senefeld did not "disseminate any disclosures or offering materials to investors or otherwise communicate with investors." [Filing No. 191-2 at 7; *see also* Filing No. 190 at 10 (Mr. Senefeld did not "disseminate any of the offering materials or other disclosures to Haab's investors").] | • June 23, 2014 email from Mr. Senefeld to Mr. Haab, Mr. Risinger, and others, stating "Please see the attached list of my most recent contacts for the TBF 2014 deal. I have recently sent out offering documents out (sic) to the following and will keep you updated. Matt please call me when you have a moment and I can walk you through investment amounts." [Filing No. 198-11 at 2.] |
| Mr. Senefeld "did not know what agreements or representations Haab made to investors about repayments of their investments or any farms' refinancing debt." [Filing No. 191-2 at 8.] | • Mr. Senefeld is listed as a recipient of an October 7, 2013 email to "the Veros Farm Loan Holding LLC Lending Group," which states "Please see the attached file for an update on the final loan fundings, the 2013 growing season and repayment plans for this year's loan. We look forward to working together with you related to this private loan investment and helping ensure this investment meets its stated objectives. If you have any questions regarding anything related to your investment please do not hesitate to contact us at anytime." [Filing No. 198-15 at 2.] The email includes a three-page attachment which states "Wanted to provide another interim update on the various operating loan fundings to the various farming organizations (the Farms) that have been completed as well as the final potential fundings being evaluated for the 2013 crop year," and then includes a "[s]ummary of 2013 Operating Loan Fundings," a "[s]ummary of Operating Loan Fundings Completed Since Last Update," a "[s]ummary of Operating Loan Fundings Previously Completed," a "Security Collateral Summary," a "[s]ummary of Investor |

| | |
|---|---|
| | Fundings," an "Update on the Farms 2013 Corps & Harvest," a "Repayment of Loans" section, and a "Repayment Options" section. [Filing No. 198-15 at 3-5.]<br><br>• Mr. Senefeld is also listed as a recipient on similar emails, sent April 3, 2013 and April 24, 2013 to the Veros Farm Loan Holding LLC Lending Group, and containing similar information for investors. [Filing No. 198-13; Filing No. 198-14.] |
| Mr. Senefeld "did not know what disclosures Haab made to his investors." [Filing No. 190 at 10.] | • Mr. Risinger stated as part of the SEC investigation that Mr. Senefeld assisted with drafting the offerings materials. [Filing No. 10-1 at 16 ("Q: And did anybody assist you with [drafting the offering materials]? A: I would get help from Tobin [Senefeld] and Shawn [Gustafson] in terms of information that I would need to do it, but I wrote them. I would go through several drafts, multiple drafts each time, I would write it. Then I would send it out to Tobin [Senefeld] and Matt [Haab] and Shawn [Gustafson] and say, here is draft number two, here is draft number three, here is draft number four, red line to show you the changes, and making sure that everybody was up to speed with me. But I was the writer").]<br><br>• Shawn Gustafson, who worked for Mr. Senefeld at FarmGrowCap, PinCap, and Pin Financial as a senior analyst, stated in his Declaration that "Risinger drafted the offering documents for the 2012 Crossroads and Kirbach farms offerings, the 2013 Veros Farm Loan Holding offering, the 2014 bridge loan offering, and the 2014 FarmGrowCap offering. I am familiar with those documents because Risinger provided them to me, and to Senefeld and Haab, for our review and comments before they were finalized." [Filing No. 198-2 at 4.]<br><br>• Similarly, Mr. Haab stated in his Declaration that "Senefeld was provided with copies of the draft and final [PPMs]…for his review and comment…. Senefeld provided both Risinger and me with information to be used in the PPMs and other disclosures that were provided to investors. For example, in 2011 and 2012 Risinger and Senefeld helped create a document entitled 'The Case for Investing in Farms: A Summary for Accredited Investors Only,' which was intended to be used in soliciting investors in farm loan investments…. Although the final draft was a group project, Senefeld and Risinger were the |

| | |
|---|---|
| | source of the information on the economics of farming, collateral security and farm profitability, which is contained in this document. And Senefeld was aware that I did use this document and provided it to investors and potential investors…." [Filing No. 198-3 at 11-12.] |
| "[Mr.] Haab was responsible for designing the deal structure based on a combination of meeting the farmers' needs balanced with the understanding of what it would take to raise the investor capital needed." [Filing No. 190 at 5-6.] | • Mr. Risinger stated in his Declaration that "Senefeld negotiated directly with the farmer on the amount of the loan, the interest rate, and the origination fee, which he instructed Gustafson to include in a term sheet which became a template for the discussion and evaluation of the loan." [Filing No. 198-4 at 6.]<br>• Mr. Haab stated in his Declaration that "Senefeld had an equal say in making the decision on whether to make a loan, and was instrumental in determining the interest rate to be charged to the farm and the necessary collateral. He actually was the one who negotiated the amount of the loan, interest rate, and origination fee with the farms." [Filing No. 198-3 at 7.] |

The factual disputes detailed above relate directly to the elements of the claims the SEC asserts against Mr. Senefeld. For example, whether and to what extent Mr. Senefeld had direct contact with investors goes to whether he "employ[ed] a device, scheme, or artifice to defraud." *See* 17 C.F.R. § 240.10b-5; 15 U.S.C. § 77q. Similarly, whether Mr. Senefeld was aware of the information being presented to potential investors through offering materials is key to determining whether he possessed the requisite scienter for the SEC to establish violations of § 10(b) and § 17(a)(1).

Because of the factual disputes that exist, the Court cannot conclude that Mr. Senefeld is not liable as a matter of law. Indeed, a reasonable jury could reach the opposite conclusions based on the evidence thus far. The Court is not endorsing either side's version of the events, but is simply finding that numerous key factual disputes exist which preclude summary judgment in

- 19 -

favor of Mr. Senefeld. Accordingly, Mr. Senefeld's Motion for Summary Judgment, [Filing No. 189], is denied.

## IV.
### CONCLUSION

For the foregoing reasons, Mr. Senefeld's Motion for Summary Judgment, [Filing No. 189], is **DENIED**. The Court requests that the Magistrate Judge confer with the SEC and Mr. Senefeld to address the possibility of an agreed resolution, or to establish a schedule for trial.

Date: June 22, 2016

                                                     Hon. Jane Magnus-Stinson, Judge
                                                     United States District Court
                                                     Southern District of Indiana

**Distribution via ECF only to all counsel of record**