# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No.  1:15-cv-659-JMS-MJD** |
| **VEROS PARTNERS, INC,** ) **MATTHEW D. HAAB,** ) **JEFFERY B. RISINGER,** ) **VEROS FARM LOAN HOLDING LLC,** ) **TOBIN J. SENEFELD,** ) **FARMGROWCAP LLC,** ) **PINCAP LLC, and** ) | |
| **Defendants,** ) | |
| **PIN FINANCIAL LLC,** ) | |
| **Relief Defendant.** ) | |

## RECEIVER'S RESPONSE TO OBJECTION AND MOTION TO QUASH

Comes now Receiver, by counsel, and files his Response to Objection and Motion to Quash filed by Broyles Co., Nicole Broyles, Cherry Farms, LLLC, Cherry Family Land, LLC, Cherry Ag Services, LLC, High Voltage Painting, LLC, James E. Cherry, Susan L. Cherry, Chris A. Cherry, Cristi K. Cherry, and Jeffrey A. Cherry (collectively the "Movants").  Receiver responds as follows:

1.      On or about July 18, 2016, Receiver served a two separate Subpoena to Produce Documents, Information, or Objects upon Broyles Co. Nicole Broyles and Broyles & Company CPA'S, LLC.  Both requests sought, in .pdf format, of "any and all records including but not limited to reports, tax returns, profit and loss statements, balance sheets, check registers, bank

account statements, invoices, and any and all other records pertaining to Cherry Farms, LLC; Cherry Family Land, LLC; Cherry Ag Services, LLC; High Voltage Painting, LLC; James E. Cherry; Susan L. Cherry; Chris A. Cherry; Cristi K. Cherry; and Jeffrey A. Cherry and Cherry Investor Group, LLC." [Filing No.256-1][ Filing No. 256-2]

2.    All of the aforementioned entities are in some way associated with Cherry Farms, LLC.  Each of the entities or individuals for which the subpoenas are seeking financial records are either members of Cherry Farms, LLC, related to a member of Cherry Farms, LLC, a business entity associated with a member of Cherry Farms, LLC, or a business entity associated with a relative of a member of Cherry Farms, LLC.

3.    On or about August 18, 2016, counsel for the Movants contacted Receiver's attorney to advise that he would be filing a Motion to Quash and preparing a privilege log to provide by Monday August 22, 2016. A privilege log was finally received late on August 29, 2016. A copy of said privilege log is attached hereto as Exhibit A.

4.    In the Objection and Motion to Quash filed August 19, 2016 [Filing No. 256], in which they request that the Court quash Receiver's subpoenas and Non-Party Request for Production of Documents, Movants assert a blanket claim of "Account-Client Privilege" for all records requested pertaining to all Movants as well as a claim of "Undue Burden".

*Accountant-Client Privilege*

5.    In support of their assertion that the documents requested by the receiver are protected by the Accountant-Client Privilege, Movants rely upon Indiana Law in their Objection and Motion to Quash. [Filing No. 256, pp. 2-3]

6.    Pursuant to Fed. R. Evid. 501, "[t]he common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed

by the Supreme Court.  But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  Fed. R. Evid. 501.

7.      "The rules on privilege apply to all stages of a case or proceeding."  Fed. R. Evid. 1101(c).

8.      The U.S. Securities and Exchange Commission ("Commission") brought this action "pursuant to Section 20(b) of the Securities Act of 1933 ("the Securities Act") [15 U.S.C. §77t(b)], Section 21(d) of the Securities Exchange Act of 1934 ("the Exchange Act") [15 U.S.C. §§78u(d)], and Section 209(d) of the Investment Advisers Act of 1940 ("the Advisers Act") [15 U.S.C. §§ 80b-9(d)]." [Filing No. 1; Filing No. 57]  As stated in the Commission's Amended Complaint, "this Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v], Section 27(a) of the Exchange Act [15 U.S.C. § 78aa], Section 214(a) of the Advisers Act [15 U.S.C. § 80b-14(a)], and 28 U.S.C. § 1331."  [Filing No. 57, p. 4]

9.      Since this matter involves the aforementioned federal statutes, federal law supplies the rule of decision in this matter as opposed to state law.  Consequently, Movants' reliance on Indiana law in support of their assertion that the documents requested by Receiver are protected by the Accountant-Client privilege is misplaced.

10.     Despite Movants' assertion of the Accountant-Client Privilege, it is well settled that there is no common law Accountant-Client privilege.  In re Grand Jury Proceedings, 220 F.3d 568, 571 (7th Cir. 2000) (citing United States v. Arthur Young & Co., 465 U.S. 805, 817–19, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984); Couch v. United States, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); and United States v. Frederick, 182 F.3d 496, 500 (7th Cir.1999), cert. denied, 528 U.S. 1154, 120 S.Ct. 1157, 145 L.Ed.2d 1070 (2000)).

11.     Congress has created a limited statutory Accountant-Client privilege, however, "the privilege only extends to communications that would be privileged were they between a taxpayer and an attorney."  United States v. Bisanti, 414 F.3d 168, n.1 (1st Cir. 2005)(citing 26 U.S.C. §

7525(a)(1)).  Movants present no argument that any of the documents the Receiver has requested are communications that would be privileged had the communications been between any of the Movants and an attorney.  Thus, this statutory Accountant-Client privilege does not apply.

12.    As there is no common law Accountant-Client privilege recognized by the federal courts, and since Movants present no argument demonstrating the applicability of the limited statutory Accountant-Client privilege, Movant's Objection and Motion to Quash must be denied.

13.    Even assuming, *arguendo*, that Indiana law supplies the rule of decision in this case, Receiver asserts that under Indiana law the Movants' Objection and Motion to Quash must still be denied.

14.    Ind.Code § 25–2.1–14–1 (1998) provides that: "A certified public accountant, a public accountant, an accounting practitioner, or any employee is not required to divulge information relative to and in connection with any professional service as a certified public accountant, a public accountant, or an accounting practitioner."

15.    "Because the Accountant-Client privilege is a statutory creation, it is 'disfavored' and is 'therefore strictly construed in order to limit its application.'".  Airgas Mid-Am., Inc. v. Long, 812 N.E.2d 842, 845 (Ind. Ct. App. 2004) (quoting First Cmty. Bank & Trust v. Kelley, Hardesty, Smith and Co., Inc., 663 N.E.2d 218, 222 (Ind.Ct.App.1996)).

16.    The Accountant-Client privilege is personal to the client rather than to the accountant. Ernst & Ernst v. Underwriters National Assurance Co., 381 N.E.2d 897, 899 (Ind.Ct.App. 1978), *reh. denied, trans. denied.*

17.    Blanket claims of privilege are disfavored as "[t]he party seeking to assert a privilege has the burden to allege and prove the applicability of the privilege 'as to each question asked or document sought." Airgas Mid-Am., Inc. v. Long, 812 N.E.2d 842, 845 (Ind. Ct. App. 2004).

18.    "Absent an articulation of specific reasons why the documents sought are privileged, the information is discoverable.  Otherwise, the whole discovery process is frustrated and vital information may be 'swept under the rug.'" Airgas Mid-Am., Inc. v. Long, 812 N.E.2d 842, 845 (Ind. Ct. App. 2004) (quoting State v. Hogan, 588 N.E.2d 560, 563 (Ind.Ct.App.1992), *trans. denied*).  Movants Objection and Motion to Quash fails to demonstrate why each individual record requested with respect to each of the Movants is privileged.  While Movants may have offered a privilege log to Receiver's counsel, Movants still assert an across the board blanket claim of Accountant-Client Privilege.  Such a blanket claim of privilege is insufficient to meet the burden of demonstrating that the information sought was privileged.  See Airgas Mid-Am., Inc. v. Long, 812 N.E.2d 842, 846 (Ind. Ct. App. 2004) (concluding that blanket privilege claim was insufficient to meet movants burden of demonstrating that the information was privileged under the Accountant-Client privilege).  For example, the privilege log contains several references to documents prepared by third parties, involving communications with third parties, or intended to be communicated to third parties (i.e. state and federal tax returns, bank records, promissory notes, etc).  Such documents are not protected by the Accountant-Client privilege.  See Airgas Mid-Am., Inc. v. Long, 812 N.E.2d 842, 845 n.3(Ind. Ct. App. 2004) (suggesting on remand that the trial court keep in mind that communications intended to be transmitted to a third person are not privileged or protected by the Accountant-Client privilege).

19.    Ultimately, the Movants' privilege log simply asserts a blanket claim of Accountant-Client privilege with respect to the documents identified in the log.  The log should therefore be deemed insufficient in support of Movants' Motion to Quash.  See Brown v. Katz, 868 N.E.2d 1159, 1168 (Ind. Ct. App. 2007) (finding that trial court did not abuse its discretion when it determined that privilege log which only asserted general Attorney-Client privilege for each identified document was insufficient).

20.    Based upon the foregoing, Receiver asserts that even if Indiana law supplies the rule of decision in this matter, the Movants have failed to demonstrate that the information sought by the receiver is privileged and not discoverable by Receiver.

21.    In addition to Movants' failure to demonstrate that the information sought is privileged, the Movants also ignore any waiver of the asserted privilege.   "[A] person with a privilege against disclosure waives the privilege if the person or person's predecessor while holder of the privilege voluntarily and intentionally discloses or consents to disclosure of any significant part of the privileged matter." Ind. R. Evid. 501.

22.    Cherry Farms, LLC, specifically agreed in three separate Loan Agreements with Veros Partners, Inc., that Cherry Farms, LLC, would "maintain accurate and complete books and records to be located at its principal office and maintain its financial condition, business, assets and property as that currently in place, all to the reasonable satisfaction of Administrative Agent, and permit Administrative Agent to examine such books and records at all reasonable times." Business Loan Agreement and Promissory Note 2014 Line of Credit Loan, Section 6(c), attached hereto as Exhibit B; Business Loan Agreement and Promissory Note 2013 Line of Credit Loan, Section 6(b), attached hereto as Exhibit C; and Business Loan Agreement and Promissory Note 2012 Restructuring Loan, Section 6(b), attached hereto as Exhibit D (emphasis added).  While Cherry Farms, LLC, may have opted to house their books and records with Nicole Broyles and Broyles & Company CPA'S, LLC, the Receiver still is permitted access to the records in accordance with the loan agreements and any Accountant-Client privilege, should it even exist, has clearly been waived.

23.    Receiver further asserts that from the outset of this case, James, Chris and Jeffrey Cherry all pledged to the Receiver full cooperation and access to information.  Furthermore, in late summer of 2015, the Receiver had a conversation with James Cherry in which Mr. Cherry

specifically consented to the Receiver communicating directly with Mr. Cherry's Accountant, Nicole Broyles, concerning his finances including any and all entities in which he had an interest or access. Furthermore, in September 2015, Mr. Cherry provided the Receiver with the relevant contact information for his accountants. Since that phone call, in September through November, 2015, alone, the Receiver had numerous interactions with Ms. Broyles.  These interactions have involved the Receiver speaking directly with Mr. Cherry's Accountant and or receiving information from Ms. Broyles pursuant to Mr. Cherry's authorization.  Further, The Cherrys consented to the Investors contacting Ms. Broyles and receiving information directly from her.

24.    Receiver would assert that Movants' actions and communications, in particular the express consent by Cherry Farms, LLC, and James Cherry, who owns a partial interest in High Voltage Painting, LLC, along with Jeff and Chris Cherry, operate as a waiver of any Accountant-Client privilege if it even exists within the context of this matter.  The claim of the privilege is therefore without merit and the Movants' Objection and Motion to Quash should be denied.

*Undue Burden*

25.    In addition to suggesting that the Court should quash the Receiver's subpoena due to blanket claim of Accountant-Client privilege, Movants also suggest that the Receiver's subpoena imposes an undue burden in support of their Motion to Quash [Filing No. 256 pp. 3-5].

26.    Receiver acknowledges that non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.  WM High Yield v. O'Hanlon, 460 F. Supp. 2d 891, 895 (S.D. Ind. 2006).  Such status, however, is not the only consideration. "[R]elevancy is one of several factors a court must also consider when computing undue burden." Id.  (citing Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc., 211 F.R.D. 658, 662-63 (D.Kan.2003)).  Other factors may include the need of the party for the documents, the breadth of the document request, the time period covered by it, and the particularity

with which the documents are requested.  Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc., 211 F.R.D. 658, 662-63 (D.Kan.2003).

27.    Additionally, "[t]he moving party has the burden of proof to demonstrate that compliance with the subpoena would be 'unreasonable and oppressive.'"  Wiwa v. Royal Dutch Petroleum Co., 392 F.3d 812, 818 (5th Cir. 2004).

28.    Receiver asserts that the information sought from Nicole Broyles and Broyles & Company CPA'S, LLC is relevant as the financial information is needed for Receiver to properly assess the finances of Cherry Farms, LLC and its outstanding loan obligations to Veros Partners, Inc.  Moreover, Receiver would assert that Receiver has previously received and reviewed some bank records and or checking account registers associated with Cherry Farms, LLC, which reflect transfer of funds from Cherry Farms, LLC, to and from many of the Movants. For example, Cherry Farms LLC checking registers show payments of High Voltage Painting, LLC,  expenses, transfer of funds to and from High Voltage Painting, LLC, payments made to and deposits received from family members James, Jeffrey, Christopher and Susan Cherry, as well as payments made to Cherry Ag, another business entity owned by members of the Cherry family.  As such, each of the Movants are in some way connected to Cherry Farms, LLC, and the records are needed so that Receiver can investigate whether there has been any improper transfer of funds from Cherry Farms, LLC in order to avoid satisfaction of its outstanding loan obligations to Veros Partners, Inc.  Most critically, the Receiver needs to verify the deposit and application of funds from several checks, which were made payable to Cherry Farms, LLC, Veros Partners Inc., and another lienholder, on which the Receiver has learned that his indorsement was forged along with the indorsement of the other lienholder.

29.    Receiver would also stress that Receiver originally requested digital copies of records, as opposed to hard copies, in order to minimize the burden on producing the records

requested.

30.    With respect to any concern about social security numbers, tax returns, names of children and other family members, bank account records, payroll information and other personal information that Movants suggest create an undue burden, Receiver would state such information could be the subject of a protective order that would prohibit dissemination of such information.

31.    The Movants have failed to demonstrate that compliance with the subpoena would be unreasonable and oppressive or in any way impose an undue burden on the Movants. Consequently, the Movants Objection and Motion to Quash should be denied.

WHEREFORE, Receiver, by counsel, respectfully requests that the Court deny the Movants' Objection and Motion to Quash, and for all other relief just and proper in the premises.

Respectfully submitted,


By  *s/Anne Hensley Poindexter*
        Anne Hensley Poindexter, #14051-29
        Altman, Poindexter & Wyatt LLC
        75 Executive Drive, Suite G
        Carmel, IN 46032
        Telephone: (317) 350-1000
        Fax: (844) 840-3416
        Email: apoindexter@apwlawyer.com
        *Counsel for the Receiver*

**Certificate of Service**

I hereby certify that on September 1, 2016, a copy of the foregoing ***Receiver's Response to Objection and Motion to Quash*** was filed electronically.  Notice of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/Anne Hensley Poindexter*
Anne Hensley Poindexter, #14051-29
Altman, Poindexter & Wyatt LLC
75 Executive Drive, Suite G
Carmel, IN 46032
Telephone: (317) 350-1000
Fax: (844) 840-3416
Email: apoindexter@apwlawyer.com