UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> VEROS FARM LOAN HOLDING LLC, TOBIN J. SENEFELD, FARMGROWCAP LLC, PINCAP LLC, and PIN FINANCIAL LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 1:15-cv-00659-JMS-MJD |

**ORDER**

Veros Partners, Inc. ("Veros") was an SEC-registered investment adviser in Indianapolis, Indiana. Pin Financial LLC ("Pin Financial") was the placement agent for certain private offerings made to Veros' advisory clients, and Defendant Tobin Senefeld was Pin Financial's Chief Executive Officer and a registered representative. Plaintiff United States Securities and Exchange Commission (the "SEC") filed this lawsuit against Mr. Senefeld and others alleging that they violated securities laws in connection with soliciting investors for, and handling investments in, certain private offerings related to farm loans. The SEC alleged that portions of the loan proceeds were not used for current farming operations, as investors were told, but rather were used to cover the farms' prior, unpaid debts. On October 11, 2017, the Court granted a request from the SEC and Mr. Senefeld to approve a bifurcated settlement whereby Mr. Senefeld agreed not to contest the facts in the Amended Complaint and the parties agreed to provide the Court with information necessary to rule on the amount of disgorgement and prejudgment interest, as well as the amount of a civil penalty if the Court finds a penalty appropriate. The issues of disgorgement, prejudgment

interest, and the appropriateness of a civil penalty are now fully briefed, and ripe for the Court's decision.[1]

# I.
## BACKGROUND

The Court held a hearing on October 11, 2017, in which it heard argument from the SEC and Mr. Senefeld regarding the SEC's Motion for Approval of Bifurcated Settlement. [*See* Filing No. 433.] The Court advised the parties that it would grant the SEC's Motion for Approval by separate order, and subsequently entered a Judgment as to Mr. Senefeld, consented to by Mr. Senefeld, in which it permanently restrained and enjoined Mr. Senefeld from violating applicable securities laws and adjudged that Mr. Senefeld shall pay "disgorgement of ill-gotten gains and prejudgment interest thereon; that the amounts of the disgorgement and civil penalty shall be determined by the Court upon motion of the [SEC]; and that prejudgment interest shall be calculated from December 1, 2013, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2)." [Filing No. 436 at 3.] The Judgement also provided that:

> In connection with the [SEC's] motion for disgorgement and/or civil penalties….: (a) Defendant will be precluded from arguing that he did not violate the federal securities laws as alleged in the Amended Complaint; (b) Defendant may not challenge the validity of the Consent or this Judgment; (c) solely for the purposes of such motion, the allegations of the Amended Complaint shall be accepted as and deemed true by the Court; and (d) the Court may determine the issues raised in the motion on the basis of affidavits, declarations, excerpts of sworn deposition or investigative testimony, and documentary evidence, without regard to the standards for summary judgment contained in Rule 56(c) of the Federal Rules of Civil Procedure.

---

[1] The Court vacated a hearing previously set at the parties' request on the issues of disgorgement, prejudgment interest, and a civil penalty after the parties advised the Court that they no longer thought a hearing was necessary. [Filing No. 457.]

[Filing No. 436 at 3-4.] [2]

## II.
### DISCUSSION

In its Motion for Disgorgement, Prejudgment Interest, and Civil Penalties, the SEC requests disgorgement of $698,818.29, prejudgment interest of $94,538.36, and a civil penalty that is "large enough to discourage [Mr.] Senefeld from future misconduct, as well as deter others who are similarly-situated from engaging in comparable instances of misconduct." [Filing No. 445 at 20-23.] Mr. Senefeld disputes the amount of disgorgement the SEC seeks, and opposes the SEC's request for a civil penalty. The Court discusses each component of the SEC's request below.

**A. Disgorgement Amount**

In support of its request for disgorgement of $698,818.29, the SEC relies upon the Declaration of Craig McShane. [Filing No. 443.] Mr. McShane is a Staff Accountant with the Enforcement Division of the SEC, and sets forth the following information in his Declaration:

- Mr. McShane reviewed bank account statements, deposit slips, wire transfer confirmations, and electronic fund transfer details for certain bank accounts controlled by Defendants, transcripts of testimony from Mr. Senefeld and other individual Defendants taken during the course of the SEC's investigation, testimony exhibits, and other documentary evidence obtained by the SEC during its investigation;

- Mr. McShane has determined that Mr. Senefeld received payments between January 1, 2013 and February 28, 2015 from four accounts (a PinCap LLC account, a Veros account as agent for lenders under PinCap LLC, a Veros account as manager for lenders under Veros Farm Loan Holding, LLC, and a FarmGrowCap LLC account) totaling $477,855.60;

- Mary Senefeld received payments totaling $220,962.69;

---

[2] Because Mr. Senefeld has agreed that the Court should accept as true the allegations in the Amended Complaint, the Court does not find it necessary to set forth the specific allegations that prove Mr. Senefeld's liability. Relevant allegations will be discussed as necessary below, and a thorough discussion of the allegations against Mr. Senefeld can be found in the Court's June 22, 2016 Order on Mr. Senefeld's Motion for Summary Judgment. [Filing No. 229.]

3

- Mr. Senefeld benefitted from payments made on behalf of PinCap LLC, because he owns one third of the company. PinCap LLC received $389,286.87 from the four accounts identified above;

- Mr. Senefeld received an investor-funded loan with a co-defendant which had a balance due of $203,775.37 as of February 28, 2015;

- PinCap also received a loan funded by investor money for $220,000, and Mr. Senefeld did not make any payments on that loan. The loan was repaid from a Veros Farm Loan Holding LLC account, with interest, in the amount of $226,835.07;

- Mr. Senefeld's wife, Mary, had an account which transferred $30,000 to the Veros Farm Loan Holding LLC account on January 31, 2014.

[Filing No. 443 at 3-4.]

In response, Mr. Senefeld argues that the SEC has not shown that disgorgement is appropriate, relying heavily on *SEC v. Collins*, 2003 WL 21196236 (N.D. Ill. 2003). [*See* Filing No. 448 at 8-10 (arguing that "[t]he SEC has simply used a staff accountant to identify payments that went to [Mr.] Senefeld, and assumes that they represent ill-gotten gains subject to disgorgement").] He also contends that certain amounts should be credited toward any disgorgement amount the SEC seeks. Specifically, he argues that he assisted in recovering a $310,000 fee owed to Pin Financial LLC, and that the Receiver noted that he "did a really good job under very difficult circumstances." [Filing No. 448 at 3.] He asserts that any disgorgement amount should "be set off or reduce[d]….by $310,000, plus the costs of any business expenses, plus the amount of money seized from [Mr.] Senefeld and his wife." [Filing No. 448 at 11.]

In its reply, the SEC asserts that Mr. Senefeld cannot now argue that he did not violate securities laws or did not obtain ill-gotten gains. [Filing No. 455 at 5.] The SEC argues that it has shown that $698,818.29 is a reasonable approximation of the profits Mr. Senefeld received from his wrongful conduct. [Filing No. 455 at 7-12.] It notes that the disgorgement amount it seeks "consist[s] of the success fees and interest rate spread fees that were paid with investor funds but

4

not disclosed to investors; the amounts that PinCap received from investor funds and then transferred to [Mr.] Senefeld as salary; and amounts [Mr.] Senefeld received from the bank accounts of the fraudulent 2013 VFLH Offering and 2014 FarmGrowCap Offering." [Filing No. 455 at 10.] The SEC also argues that any business expenses Mr. Senefeld incurred should not reduce the disgorgement amount, and that the $310,000 fee paid to Pin Financial should not reduce the amount because the fee was less than it should have been due to Mr. Senefeld's actions and since Mr. Senefeld already received $31,000 for his services related to that transaction. [Filing No. 455 at 11-16.] Finally, the SEC notes that PinCap received $389,286.87 in ill-gotten gains, and that the SEC did not seek disgorgement of any part of this amount even though Mr. Senefeld is a one-third owner of PinCap. [Filing No. 455 at 16.]

"Disgorgement of illegal profits and unjust enrichment is an equitable remedy available under the federal securities laws." *U.S. S.E.C. v. Church Extension of Church of Church, Inc.*, 429 F.Supp.2d 1045, 1050 (S.D. Ind. 2005) (citing *SEC v. First City Financial Corp.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989)). Disgorgement is a form of "[r]estitution measured by the defendant's wrongful gain." *Kokesh v. S.E.C.*, --- U.S. ----, 137 S.Ct. 1635, 1640 (2017) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 51, Comment a, p. 204 (2010)). When the SEC seeks disgorgement, "it acts in the public interest, to remedy harm to the public at large, rather than standing in the shoes of particular injured parties." *Kokesh*, 137 S.Ct. at 1643. In cases where restitution has already been ordered, courts generally hold that "the civil disgorgement amount should be reduced by the amount already paid in restitution." *S.E.C. v. McCaskey*, 2002 WL 850001, *14 (S.D. N.Y. 2002) (citing *S.E.C. v. Palmisano*, 135 F.3d 860, 863-64 (2d Cir. 1998)).

"Courts have broad discretion in determining whether to order disgorgement, and in calculating the amount of disgorgement…. The amount ordered need only be a 'reasonable

5

approximation' of profits 'causally connected' to the wrongdoing…. Any risk of uncertainty in calculating disgorgement falls on the defendants whose conduct created the uncertainty." *S.E.C. v. Cook*, 2015 WL 5022152, *27 (S.D. Ind. 2015) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996); *S.E.C. v. Patel*, 61 F.3d 137, 139-40 (2d Cir. 1995)); *see also U.S. S.E.C. v. Alanar, Inc.*, 2008 WL 1994854, *4 (S.D. Ind. 2008) ("The SEC is required to show that the amount of disgorgement is a 'reasonable approximation' of the profits the defendant reaped from the wrongful conduct…. The burden then shifts to the defendant to show that this approximation is inaccurate…. Any ambiguity in the calculation should be resolved against the defrauding party") (citations omitted).

Mr. Senefeld does not deny receiving the amounts the SEC seeks to disgorge, instead arguing that the SEC has not met its burden of demonstrating that the amounts are ill-gotten gains subject to disgorgement, and that he is entitled to certain credits against the disgorgement amount. The Court rejects Mr. Senefeld's arguments. First, Mr. Senefeld relies heavily on the *Collins* case to argue that the SEC has not established that the amounts Mr. Senefeld received were as a result of wrongdoing by him. [Filing No. 448 at 8-10.] The court in *Collins* refused to order disgorgement because the SEC had not shown that defendants violated any securities laws. *Collins*, 2003 WL 21196236 at *6 ("These facts, without more, do not show that [defendants] violated any securities laws or committed any wrongdoing; among other things, they do not reveal the requisite intent…. The SEC offered no evidence that [defendants] ever made any misrepresentations…let alone that they did so knowingly"). Conversely, here Mr. Senefeld has agreed not to contest the allegations in the Amended Complaint, which establish that he violated securities laws. Consequently, he cannot contest the SEC's allegations that he was an active participant in the securities fraud scheme and knowingly and intentionally violated securities laws.

6

[*See* Filing No. 57.] The McShane Declaration sufficiently traces the funds received by Mr. Senefeld – which he does not dispute receiving – to the securities fraud scheme such that disgorgement of those funds is appropriate.

Second, Mr. Senefeld argues that he should receive credit against the disgorgement amount for a $310,000 fee he helped to collect on behalf of Pin Financial, and for certain business expenses. The $310,000 fee related to work performed by Pin Financial in finding a commercial lender that would provide a multimillion dollar loan to a farming operation in South Dakota ("Hardes"). [Filing No. 454 at 1-2.] Mr. Senefeld worked on obtaining the loan, and ultimately found a lender for Hardes. [Filing No. 454 at 2.] When the underwriting of the loan was almost complete, the Receiver in this matter was appointed over Pin Cap, which owns 100% of Pin Financial. [Filing No. 454 at 2.] Certain information was needed to close the loan, and Mr. Senefeld cooperated with the Receiver to obtain that information. [Filing No. 454 at 2.] Shortly before the loan was to close, counsel for Hardes advised the Receiver that Hardes should not have to pay commission to Pin Financial because "Hardes did not believe Pin Financial was instrumental in acquiring the loan from the lender." [Filing No. 454 at 2.] Mr. Senefeld cooperated with the Receiver by providing documents and other information so that the Receiver could work toward collecting the fee to which Hardes had agreed. [Filing No. 454 at 3.] Hardes ultimately agreed to pay a reduced fee (originally 7%, reduced to 4%) of $310,000. [Filing No. 454 at 3.] Mr. Senefeld received $31,000 "in recognition of his help in securing the Hardes loan commission payment." [Filing No. 454 at 4.] Mr. Senefeld argues any disgorgement amount should be reduced by $310,000 because he was instrumental in obtaining payment of the fee. The Receiver states that without the authority given by the Court to negotiate with Hardes and Pin Financial, no fee would have been paid. [Filing No. 454 at 4.]

7

The Court does not find any reason presented by Mr. Senefeld that the disgorgement amount should be reduced by the $310,000 fee. The fee was an amount owed to Pin Financial, not to Mr. Senefeld, and Mr. Senefeld has already been paid $31,000 for his services in connection with the loan to Hardes. There simply is no legal authority to support the notion that Mr. Senefeld should receive credit for the entire $310,000 fee simply because he provided some assistance in obtaining payment.

As for business expenses, Mr. Senefeld argues that he "incurred $31,719.49 of unreimbursed expenses" and "spent $51,719.49 on business expenses," and that those amounts should be deducted from any disgorgement amount. [Filing No. 448 at 3.] Ordinary business expenses generally are not deducted from the disgorgement amount. *See, e.g.*, *United States Securities v. Benger*, 2015 WL 6859168, *7 (N.D. Ill. 2015) ("[Defendants] are not entitled to deduct from the disgorgement their obligations incurred in furtherance of the perpetration of the fraud. 'It would be unjust to permit the defendants to offset against investor dollars they received the expenses of running the very business they created to defraud those investors into giving the defendants the money in the first place'") (quoting *S.E.C. v. JT Wallenbrock & Associates,* 440 F.3d 1109, 1114 (9th Cir. 2006)); *F.T.C. v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011) ("it is well established that defendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts") (citation and quotation omitted). The Court finds that Mr. Senefeld is not entitled to a deduction of "business expenses" from the disgorgement amount.

In sum, the Court **GRANTS** the SEC's Motion for Disgorgement, Prejudgment Interest, and Civil Penalties, [Filing No. 444], to the extent that it finds that Mr. Senefeld must disgorge $698,818.29.

### B. Prejudgment Interest

The SEC seeks $94,538.36 in prejudgment interest on the $698,818.29 disgorgement amount. [Filing No. 443-3; Filing No. 445 at 20.] Mr. McShane details in his Declaration how the prejudgment interest was calculated, stating that he "calculated this pre-judgment interest by applying the interest rate, adjusted quarterly, used by the Internal Revenue Service for computation of interest on underpayment of taxes. Interest was compounded quarterly, beginning on December 1, 2013 as required by the Court." [Filing No. 443 at 4-5.] Mr. Senefeld does not dispute the amount of prejudgment interest the SEC seeks. [*See* Filing No. 448.]

"Courts have 'wide discretion' in awarding prejudgment interest, which helps assure that defendants do not profit from their fraud…. Prejudgment interest is appropriate on disgorgement amounts based on the IRS underpayment rate." *Cook*, 2015 WL 5022152 at *28 (citing *SEC v. Lauer*, 478 Fed. Appx. 550, 557 (11th Cir. 2012); *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003); *SEC v. Koenig*, 532 F.Supp.2d 987, 995 (N.D. Ill. 2007)). The Court finds it appropriate here to award prejudgment interest on the $698,818.29 disgorgement amount, and **GRANTS** the SEC's Motion for Disgorgement, Prejudgment Interest, and Civil Penalties, [Filing No. 444], to the extent that it awards prejudgment interest, calculated using the Internal Revenue Service underpayment rate for the relevant time period, of $94,538.36.

### C. Civil Penalty

In support of its request that the Court impose a civil penalty on Mr. Senefeld, the SEC argues that Mr. Senefeld acted deliberately and recklessly, and that his actions harmed investors. [Filing No. 445 at 22.] The SEC notes that Mr. Senefeld violated multiple anti-fraud provisions of the federal securities laws, that when this action was filed investors were owed approximately $9 million, and that only requiring disgorgement would return Mr. Senefeld to the status quo

without providing any form of punishment. [Filing No. 445 at 22-23.] The SEC contends that a civil penalty is required "to discourage [Mr.] Senefeld from future misconduct, as well as deter others who are similarly-situated from engaging in comparable instances of misconduct." [Filing No. 445 at 23.]

In response, Mr. Senefeld argues that he cooperated in terms of generating income for the receivership estate, and that his current annual net income is $44,993.25 so a significant penalty would not serve a deterrent purpose. [Filing No. 448 at 13.] Mr. Senefeld asserts that there are no allegations in the Amended Complaint that he "had any contact with Veros's investors," and that he "was never an owner or employee of Veros, nor did he ever know the identities of or have contact with any of Veros's clients." [Filing No. 448 at 14.] Mr. Senefeld concedes that a "first tier civil penalty is appropriate," and notes that for each first tier violation the civil penalty is capped at $7,500. [Filing No. 448 at 14.]

In reply, the SEC reiterates its arguments and also contends that Mr. Senefeld "has received substantial amounts of money over the past few years," and received $524,412.14 between September 3, 2015 and January 18, 2017. [Filing No. 455 at 18.] In support of that contention, the SEC submits another Declaration from Mr. McShane (the "Second McShane Declaration") which details amounts received by two companies established by Mr. Senefeld and his wife, and owned by Mr. Senefeld's wife and children. [Filing No. 453.] The SEC also filed a third Declaration from Mr. McShane (the "Third McShane Declaration") in which he sets forth amounts deposited into bank accounts in the name of Mr. Senefeld's wife and children, but then used for family expenses that benefitted Mr. Senefeld. [Filing No. 466.]

*1. Motion to Strike*

Before discussing whether it should impose a civil penalty, the Court notes that Mr. Senefeld filed a Motion to Strike References to McShane Affidavit in which he requests that the Court strike any references to the Second McShane Declaration because "McShane and the SEC are imputing income generated by [Mr.] Senefeld's wife and children's businesses to him individually," but have not argued that the two businesses owned by Mr. Senefeld's wife and children "are, in reality, nothing more than alter egos of [Mr.] Senefeld whose revenue should somehow be considered in determining the amount of any civil penalty levied against [Mr.] Senefeld." [Filing No. 465 at 2.] The SEC responds to the Motion to Strike by re-emphasizing its arguments regarding Mr. Senefeld's financial situation, and also argues that there is no basis upon which to strike references to the Second McShane Declaration. [Filing No. 467.]

Although Mr. Senefeld does not specify under which rule of civil procedure he brings his Motion to Strike, Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Mr. Senefeld essentially argues that the information in the Second McShane Declaration does not show that his income was more than what he has claimed. This is an argument regarding the weight the Court should give the Second McShane Declaration, and does not provide a basis for striking references to the Declaration. The parties have each set forth their positions, and the Court will address their arguments below. The Court **DENIES** Mr. Senefeld's Motion to Strike, [Filing No. 465].

*2. Appropriateness of Civil Penalty*

15 U.S.C. §§ 77t(d) and 78u(d)(3) authorize district courts to impose civil penalties in SEC enforcement cases. "A civil penalty serves to punish and deter wrongdoers because disgorgement

'does not result in any actual economic penalty or act as financial disincentive to engage in securities fraud.'" *Cook*, 2015 WL 5022152 at *28 (quoting *SEC v. Moran*, 944 F.Supp. 286, 296 (S.D. N.Y. 1996)). A district court has wide discretion in setting the amount of a civil penalty. *Cook*, 2015 WL 5022152 at *29. "In determining what the penalties should be, the court should consider the seriousness of the violations, the defendant's intent, whether the violations were isolated or recurring, whether the defendant has admitted wrongdoing, the losses or risks of losses caused by the conduct, and any cooperation the defendant provided to enforcement authorities." *Alanar*, 2008 WL 1994854 at *7.

15 U.S.C. § 78u(d)(3)(B) sets forth three tiers of penalties: (1) the first tier, which shall "be determined by the court in light of the facts and circumstances," and shall not exceed the greater of $5,000 or the gross amount of pecuniary gain to the defendant as a result of the violation; (2) the second tier, which shall not exceed the greater of $50,000 or the gross amount of pecuniary gain to the defendant as a result of the violation, if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"; and (3) the third tier, which shall not exceed the greater of $100,000 or the gross amount of pecuniary gain to the defendant as a result of the violation, if the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement," and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." Mr. Senefeld believes that a first tier penalty is appropriate; the SEC seeks a third tier penalty, although does not suggest a specific amount. The Court finds that a penalty which lies somewhere in the middle is appropriate.

Mr. Senefeld's securities law violations involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." 15 U.S.C. § 78u(d)(3)(B)(ii). While Mr.

Senefeld paints himself as a small player in the scheme, arguing that former defendants Matthew Haab and Jefferey Risinger committed most of the fraudulent acts, and that he did not have any contact with Veros's clients, the evidence in this case indicates otherwise. In connection with its Order on Mr. Senefeld's Motion for Summary Judgment, the Court outlined evidence from the record which shows that Mr. Senefeld did have direct contact with investors, disseminated disclosures or offering materials to investors or otherwise communicated with investors, knew what agreements or representations Mr. Haab made to investors about repayment of investments or any farms' refinancing debt, and negotiated directly with farmers regarding loans, interest rates, and origination fees. [Filing No. 229 at 15-18.] Mr. Senefeld's assertion that he was not directly involved with investors also contradicts allegations in the Amended Complaint, which Mr. Senefeld has agreed not to challenge. [*See* Filing No. 57.] The Court finds that Mr. Senefeld's actions warrant imposition of at least a second tier civil penalty.

While the facts here may even warrant imposition of a third tier civil penalty, the Court finds that a second tier penalty is more appropriate when considering Mr. Senefeld's financial situation and the agreements the SEC reached with Mr. Haab and Mr. Risinger. As for Mr. Senefeld's financial condition, the SEC has shown that Mr. Senefeld's wife and children received over $350,000 from the two companies owned by them. [*See* Filing No. 466 at 5.] The SEC has also shown that some of that money was used for family expenses such as vacations, concert tickets, a new dog, a canoe, a bicycle, mortgage payments, and utility payments. [Filing No. 466 at 8-9.] To be sure, this money benefitted Mr. Senefeld because it was used for the general benefit of the family. But the fact remains that the funds were earned by companies not owned by Mr. Senefeld and were deposited into accounts not owned by Mr. Senefeld. The SEC's implication is clear: that Mr. Senefeld and his wife set up the two companies as a way to hide assets. But the

funds also benefitted Mr. Senefeld's wife and children, and the SEC has not shown that these amounts should be considered part of Mr. Senefeld's annual income.

The Court also finds it significant that the SEC entered into a consent judgment with Mr. Haab whereby it did not seek a civil penalty, and only sought $183,640 of the total $563,121 disgorgement amount. [Filing No. 251-1 at 2.] Additionally, the consent judgment the SEC entered into with Mr. Risinger provides that it did not seek a civil penalty and only required payment of $100,000 of the total $967,197 disgorgement amount. [Filing No. 250-1 at 2.]

The Court does note, however, that this is not the first time Mr. Senefeld has violated securities laws. In 1999, Mr. Senefeld was charged with engaging in a fraudulent scheme as a registered representative of a broker-dealer. [Filing No. 57 at 5.] Mr. Senefeld settled the charges, was ordered to cease and desist from violating federal securities laws, served a twelve-month suspension from associating with any broker-dealer, and paid a $25,000 civil penalty. Yet, he has violated federal securities laws again.

The Court has weighed Mr. Senefeld's history with federal securities law violations, the seriousness of his violations here, his intent, the fact that the violations were recurring, and the loss caused by his conduct against his financial condition and the fact that the SEC did not seek civil penalties against Mr. Haab and Mr. Risinger. It finds that a second tier civil penalty of $50,000 is appropriate, and will hopefully have a deterrent effect on Mr. Senefeld. *See Alanar, 2008 WL 1994854 at \*19-20*. The SEC's Motion for Disgorgement, Prejudgment Interest, and Civil Penalties is **GRANTED IN PART** to the extent that the Court imposes a $50,000 civil penalty on Mr. Senefeld.

## III.
### CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the SEC's Motion for Disgorgement, Prejudgment Interest, and Civil Penalties, [444], to the extent that it **ORDERS** Mr. Senefeld to disgorge $698,818.29, pay $94,538.36 in prejudgment interest, and pay a civil penalty of $50,000. The Court **DENIES** Mr. Senefeld's Motion to Strike References to McShane Affidavit, [465]. Final judgment as to Mr. Senefeld shall enter accordingly.

Date: 2/6/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**